UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALI TAJ BEY**,

      Plaintiff,

v.                                     Case No. 8:25-cv-02848-WFJ-AAS

**TRANSUNION LLC**, et al.,

      Defendants.

_____/

## <u>ORDER</u>

Before the Court is Defendant Trans Union, LLC's ("TransUnion") Motion to Dismiss Plaintiff's Amended Complaint. Dkt. 44. Plaintiff Ali Bey, proceeding *pro se*, has failed to timely respond in opposition.[1] For the reasons explained below, the Court grants the motions to dismiss the Amended Complaint with prejudice.

## BACKGROUND

This dispute centers around Plaintiff Bey suing several Defendants, including TransUnion, over alleged inaccuracies in his consumer report and file. Dkt. 31 ¶¶ 1, 6. In the Complaint, Plaintiff alleges he requested his consumer file from TransUnion on October 29, 2025. *Id.* ¶ 6. The consumer file provided allegedly contained several inaccuracies, including telephone numbers that Plaintiff never

---

[1] Instead, Plaintiff Bey filed a motion for leave to file a second amended complaint. Dkt. 54. As discussed below, the Court denies this motion to amend as moot.

1

used or maintained and a misspelling of his employer's name as "REPUBLICS OF MARRAKICH" instead of "REPUBLIC OF MARRAKECH, INC." *Id.* ¶¶ 6–9. In "April-May 2025," Plaintiff sent a dispute to TransUnion, identifying these inaccuracies. *Id.* ¶ 10. TransUnion allegedly "failed to reasonably reinvestigate these disputes and failed to correct or delete the inaccurate telephone numbers and the employer identification in Plaintiff's TransUnion Disclosure." *Id.* ¶ 11.

As to Plaintiff's consumer report, in "September and October 2025," Plaintiff applied for credit with multiple lenders. *Id.* ¶ 12. Plaintiff claims these lenders all obtained Plaintiff's consumer report from TransUnion, and that Defendant reported a "public record – bankruptcy," which was not listed in the consumer file Plaintiff received on October 29, 2025. *Id.* ¶ 13. Plaintiff also raises concerns that certain tradelines in his report lack a "dispute indicator" and have "delinquency flags" despite being charged-off. *Id.* ¶¶ 14, 15, 50.

On December 4, 2025, Plaintiff filed an amended complaint, alleging twelve counts against Defendant TransUnion for violations of the Fair Credit Reporting Act ("FCRA"), specifically 15 U.S.C. §§ 1681e(b), 1681i(a). *Id.* at 1–12. Plaintiff claims that, based on these alleged inaccuracies, he has suffered "damages, including denial of credit, loss of credit opportunities, time and expense in disputing, and emotional distress." *Id.* ¶ 16.[2]

---

[2] Notably, this case is not Plaintiff's first lawsuit against TransUnion before this Court. As Defendant correctly points out, Plaintiff first sued TransUnion in *Bey v. American Express National Bank et al.*, Case No. 8:25-cv-01066-WFJ-

**LEGAL STANDARD**

As an initial matter, *pro se* litigants' filings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This liberal reading, however, does not exempt *pro se* plaintiffs from the pleading standards outlined in the Federal Rules of Civil Procedure or the Local Rules of the Middle District of Florida. *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005); *Caton v. Louis*, No. 2:07-CV-32-FtM-99SPC, 2007 WL 9718731, at *1 (M.D. Fla. Feb. 21, 2007). Moreover, a district court may not serve as a *pro se* plaintiff's "*de facto* counsel" or "rewrite an otherwise deficient pleading. . . ." *See GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in a light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To

---

AEP (M.D. Fla. 2025) (the "First Lawsuit"). Dkt. 44 at 2. In the First Lawsuit, Plaintiff raised similar allegations against TransUnion for inaccurate tradeline reporting under the FCRA. *See* First Lawsuit Dkt. 77 (showing Plaintiff Bey's fourth amended complaint). Indeed, Plaintiff filed four complaints against TransUnion in the First Lawsuit. *See* First Lawsuit Dkts. 1, 4, 15, 77. After the fourth complaint was filed, this Court warned Plaintiff Bey that no further amendments would be permitted. *See* First Lawsuit Dkt. 73. Like the instant case, TransUnion moved to dismiss the amended claims against it in the prior lawsuit, *see* First Lawsuit Dkt. 100, and Magistrate Judge Anthony E. Porcelli entered a Report and Recommendation recommending that TransUnion's motion to dismiss be granted, and the prior case be dismissed with prejudice. *See* First Lawsuit Dkt. 144. However, before this Court could rule on the Magistrate Judge's Report and Recommendation, Plaintiff voluntarily dismissed his fourth amended complaint against all the defendants in the First Lawsuit. *See* First Lawsuit Dkts. 145, 146. Now, the instant case presents the sixth complaint Plaintiff Bey has attempted to assert against TransUnion, as Plaintiff has already amended his complaint once in this case. *See* Dkts. 1, 31.

3

survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citation modified) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). The Court does not need to accept as true any bare legal conclusions offered in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

For the reasons discussed below, the Court grants Defendant's motions to dismiss with prejudice. As pled, the Court finds that Plaintiff has failed to state a claim under the FCRA.

### I.    Plaintiff's FCRA Claims

Plaintiff's first twelve counts allege that Defendant violated § 1681e(b) and § 1681i of the FCRA. Dkt. 31 at 1–12. TransUnion argues these counts should be dismissed because "(1) [the Amended Complaint] constitutes a shotgun pleading, (2) every count fails to state a legally cognizable claim again TransUnion, (3) perhaps most egregiously, Plaintiff asserted demonstrably false factual allegations as purported support for his claims, and (4) this litigation is a sly contravention of this Court's order in the First Lawsuit and Plaintiff's sixth attempt to state a claim against Trans Union based on the same nucleus of operative facts." Dkt. 44 at 2–3. The Court

4

agrees with TransUnion and dismisses the Amended Complaint for failure to state a cognizable FCRA claim.

The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "The FCRA creates a private right of action against consumer reporting agencies for the negligent, or willful, violation of any duty imposed under the statute." *Collins v. Experian Info. Sol., Inc.* 775 F.3d 1330, 1333 (11th Cir. 2015) (citing *Safeco*, 551 U.S. at 53 (2007)).

Under § 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To establish a claim under § 1681e(b), a plaintiff must show "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Coleman v. Experian Info. Sols., Inc.*, 655 F. Supp. 3d 1285, 1300 (N.D. Ga. 2023) (quoting *Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1365 (N.D. Ga. 2005)); *see also Losch*, 995 F.3d at 944 ("To state a claim under § 1681e, the plaintiff must show that the agency's report contained factually inaccurate information, that the

procedures it took in preparing and distributing the report weren't 'reasonable,' and that damages followed as a result.").

Similarly, "[t]he elements of a claim under § 1681i—which focuses on the consumer's credit 'file' rather than his credit 'report'—are the same, except that the plaintiff needn't show that the agency prepared and distributed a report." *Losch*, 995 F.3d at 944 (quoting *Collins*, 775 F.3d at 1335). Because Plaintiff challenges TransUnion's procedures and reinvestigation of his report, Dkt. 31 ¶¶ 11, 15, the report-file distinction is immaterial. As such, the Court addresses together the reasonableness of TransUnion's report-preparation "procedures," § 1681e(b), and its "reinvestigation," § 1681i(a).

Here, Plaintiff failed to establish the threshold issue of whether TransUnion even reported factually inaccurate information. Counts I–VII involved the allegedly inaccurate telephone numbers and misspelled employer's name listed in the consumer file Plaintiff requested from TransUnion. *See* Dkt. 31 at 7–9. However, this type of "inaccurate contact information cannot give rise to liability under § 1681e(b)" since "such information does not 'bear[] on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.'" *Cohen v. Equifax Info. Servs., LLC*, 827 F. App'x 14, 17 (2d Cir. 2020) (quoting 15 U.S.C. §§ 1681a(d)(1), 1681e(b)); *see also Gray v. Experian Info. Sols., Inc.*, No. 8:23-CV-981-WFJ-AEP, 2023 WL 6895993, at *3

(M.D. Fla. Oct. 19, 2023) (noting that "[c]ourts, generally, have held that personal identifying information such as a consumer's name and social security number does not itself constitute a credit report"); *Daniels v. Experian Info. Sols., Inc.*, No. CV 109-017, 2009 WL 1811548, at *4 (S.D. Ga. June 24, 2009) (noting that a consumer report does not include the consumer's name, address, SSN, or phone number); *Individual Reference Servs. Grp., Inc. v. FTC*, 145 F. Supp. 2d 6, 17 (D.D.C. 2001), *aff'd sub nom.*, *Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002) (noting that "credit header" data, such as name, address, and social security number, is not a consumer report because this information does not bear on creditworthiness). In light of such persuasive authority, the Court finds that Plaintiff has failed to sufficiently plead that inaccurate information was included in his consumer file or report as to Counts I–VII.

Regardless, even if inaccurate contact information falls under the FCRA, the Amended Complaint does not sufficiently allege that Plaintiff's injuries were caused by misspelling his employer's name and listing incorrect telephone numbers. Indeed, the Amended Complaint asserts Plaintiff's damages stemmed from the allegedly inaccurate "public record – bankruptcy" information provided to credit lenders, not the inaccurate contact information in his consumer file or report. Dkt. 31 ¶¶ 11, 12, 16. At most, Plaintiff only states he suffered "emotional distress" due to a failure to "reasonably reinvestigate," *id.* ¶ 16, which is nothing more than a "formulaic

recitation" of a §§ 1681e(b) and 1681i(a) element. *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). As such, the Court dismisses Counts I–VII for failure to state a claim under 15 U.S.C. §§ 1681e(b), 1681i(a).

Turning to Counts VIII–X, TransUnion argues that the allegations in the Amended Complaint are directly contradicted by Plaintiff's attachments to his complaint. Dkt. 44 at 9. Specifically, the Amended Complaint alleges that credit lenders listed "public record — bankruptcy" as the principal reason for Plaintiff's credit denial after receiving Plaintiff's consumer report from TransUnion. *Id.* (quoting Dkt. 31 ¶¶ 12, 39–45). However, the attachments to the Amended Complaint show denial letters from each credit lender that do not reference bankruptcy as the reason for the denial. *Id.* (citing Dkt. 31-3). Instead, "[t]he reasons listed for Plaintiff's credit denials include 'serious delinquency,' 'public record or collection filed,' 'too few accounts currently agreed as paid,' 'amount of available bank revolving credit,' etc." *Id.* The Court agrees with TransUnion and finds that Counts VIII–X are due to be dismissed since Plaintiff's attachments contradict the Amended Complaint.

In the Eleventh Circuit, a district court can "consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit

itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). "The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself." *Id.*; *see Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

Here, Plaintiff's factual allegation that "public record — bankruptcy" is the reason for TD Auto Finance, M&T Bank, and Valley National Bank's denials is plainly contradicted by the attached denial letters from all three credit lenders. *Compare* Dkt. 31 ¶¶ 12, 39–45, *with* Dkt. 31-3. Indeed, contrary to Plaintiff's allegation about "bankruptcy" being the reason for the denial, TD Auto Finance's letter lists the specific reasons as "serious delinquency, and public record or collection filed," "amount of total high credit on all tradelines," "too few accounts currently paid as agreed," and "amount of available bank revolving credit." Dkt. 31-3 at 4, 6. Similarly, M&T Bank states that Plaintiff "did not score a sufficient number of points for approval" due to "[s]erious delinquency, public record or collection filed," "[i]nsufficient number of satisfactory accounts," "[p]roportion of revolving balances to revolving credit limits is too high," and "[l]ack of recent information on auto loans or [l]ack of auto loans." *Id.* at 8. Likewise, Valley National Bank informed Plaintiff that the denial was due to "[s]erious delinquency, and public record or

collection filed," "[t]oo few accounts currently paid as agreed," "[p]roportion of balances to credit limits is too high on bank revolving or other revolving accounts," and "[l]ack of recent auto loan information." *Id.* at 10. In short, the Amended Complaint's conclusory allegation about "public record — bankruptcy" is directly contradicted by more concrete statements in an attachment to the Amended Complaint. Dkt. 31 ¶ 12. Therefore, the Court finds that the statements in the attachment will control, *see Griffin Indus.*, 496 F.3d at 1205, and dismisses Counts VIII–X for failure to state a claim under the FCRA.

Finally, Counts XI–XII fare no better and are also due to be dismissed. In Count XI, Plaintiff alleges that TransUnion "failed to annotate the consumer file with a consumer-disputes notation or similar indicator for those tradelines." Dkt. 31 ¶ 47. As to Count XII, Plaintiff alleges that TransUnion's reporting of a tradeline was "plausibly internally inconsistent" because Defendant reported a charged-off status as well as a delinquency. Dkt. 31 ¶¶ 14, 50. However, even when liberally construing the allegations in the Amended Complaint, neither of these counts sufficiently states a claim under 15 U.S.C. §§ 1681e(b), 1681i(a).

Beginning with Count XI, Plaintiff is generally correct that TransUnion's failure to annotate a consumer file with a consumer-disputes notation can be a violation of the FCRA. The FCRA provides that "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is

10

disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3). "If a consumer reporting agency is notified pursuant to [15 U.S.C. § 1681s-2(a)(3)] that information regarding a consumer [which] was furnished to the agency is disputed by the consumer, the agency shall indicate that fact in each consumer report that includes the disputed information." 15 U.S.C. § 1681c(f). Thus, once a furnisher notifies a credit reporting agency that the consumer has disputed information about the furnisher's account, the FCRA requires the credit reporting agency to "indicate that fact in each consumer report that includes the disputed information." *Id.*

However, even if there is an alleged inaccuracy by failing to add any dispute notation, Plaintiff's Amended Complaint never alleges that the inclusion of the inaccurate entry caused his injuries. As discussed above, Plaintiff asserts his damages stemmed from the allegedly inaccurate "public record – bankruptcy" information provided to credit lenders, not the failure to include consumer-dispute notations to the Figure Lending and Navy Federal tradelines in his consumer file or report. *See* Dkt. 31 ¶¶ 12, 15, 16. At most, Plaintiff only vaguely states he suffered "emotional distress" due to a failure to "reasonably reinvestigate," *id.* ¶ 16, which is nothing more than a conclusory "formulaic recitation" of the causation element.

11

*Twombly*, 550 U.S. at 555. Without more, the Court dismisses Count XI for failure to state a claim under 15 U.S.C. §§ 1681e(b), 1681i(a).

As to Count XII, the Court cannot discern any inaccuracy that would give rise to an FCRA violation. Plaintiff alleges that it is an "internal inconsisten[cy]" for TransUnion to report a delinquency flag for certain tradelines that have "sold/charged-off" and "charged-off/closed" statuses. Dkt. 31 ¶¶ 14, 50. However, as TransUnion correctly points out, "reporting a charge-off and a delinquent amount for a debt is not in itself inaccurate." Dkt. 44 at 11. The Eleventh Circuit has already explained the following about charge-off debts:

> A consumer debt is created when an entity such as a bank, a credit card company, or a cell phone provider (an "original creditor") extends credit to a consumer. The consumer must then make payments on the debt in accordance with the terms of her contract with the original creditor. *See* Federal Trade Commission, *The Structure and Practices of the Debt Buying Industry*, 2013 WL 419348, at *10 (Jan. 2013) (hereinafter "FTC Report"). Should a consumer fall behind on her payments, the original creditor will eventually be entitled to "charge off" the debt as severely delinquent. *See id.* at *12. Charged-off debt is deemed uncollectable and treated as a loss for accounting purposes. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n. 5 (11th Cir. 2010). But charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt. *See id.* ("[C]harged off debt is not forgiven."); FTC Report, 2013 WL 419348, at *14 (describing measures taken by original creditors to collect charged-off debts).
>
> Once a debt has been charged off, there are two ways an original creditor can recoup its losses. First, the original creditor may continue attempting to collect the debt itself—either by utilizing internal collections staff, *see* FTC Report, 2013 WL 419348, at *14, or by contracting with a third-party agent (a "collection agency") willing to

12

collect the debt on behalf of the original creditor, *see, e.g.*, *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 826 (7th Cir. 2005). Alternatively, the original creditor may choose to sell the debt to a third-party purchaser (a "debt buyer") at a discounted price based on the reduced likelihood of collection. FTC Report, 2013 WL 419348, at *18. When an original creditor sells a debt, the original creditor relinquishes its right to collect the debt and transfers that right to the debt buyer. *See id.* at *11–14. This allows the original creditor to wash its hands of the debt while still recouping a fraction of its losses on the secondary debt market. *Id.* at *11.

*Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297–98 (11th Cir. 2016). As such, adding a delinquency flag to the charge-off debt is not inaccurate, since a debt is charged off only if the consumer has been delinquent in paying it. *See Craigg v. Bank of Am. Corp.*, No. 1:24-CV-88-SEG-JKL, 2024 WL 1957354, at *3 (N.D. Ga. Mar. 21, 2024), *report and recommendation adopted*, No. 1:24-CV-0088-SEG-JKL, 2024 WL 4251905 (N.D. Ga. Aug. 20, 2024). In other words, it is delinquent accounts that creditors charge off. *See Hinkle*, 827 F.3d at 1297 ("Should a consumer fall behind on her payments, the original creditor will eventually be entitled to 'charge off' the debt as severely delinquent."); *Lantos v. Equifax Info. Servs., L.L.C.*, No. 2:23-CV-00240-LEW, 2024 WL 778819, at *3 (D. Me. Feb. 26, 2024) (citation modified) (explaining that federal regulations require that banks charge-off debt over 180 days past due so that their balance sheets do not misleadingly report delinquent accounts with little chance of being paid in full as assets). The FCRA allows "credit reporting agencies to retain a charged off notation for a debt on a

13

consumer's credit report for up to seven years." *Craigg*, 2024 WL 1957354, at *3; *see also* 15 U.S.C. § 1681c(a)(4).

Here, the allegations in Count XII do not allege that the charged-off tradelines are not his and that Plaintiff attempted to dispute them with TransUnion. *See e.g.*, *Hinkle*, 827 F.3d at 1299–1301 (discussing that the plaintiff sued under the FCRA based on the defendant erroneously attributing a charged-off account to her and failing to investigate the dispute). Instead, Plaintiff simply takes issue with TransUnion reporting his two tradelines were charged-off and delinquent. Dkt. 31 ¶¶ 14, 50. But, as discussed above, it is not inaccurate to report a charge-off status or add a delinquency flag to a delinquent account. Therefore, because Plaintiff has failed to plead any inaccuracy that violated the FCRA, he has failed to state a claim in Count XII under 15 U.S.C. §§ 1681e(b), 1681i(a).

## CONCLUSION

The Eleventh Circuit is clear that this Court must give a *pro se* plaintiff, like Plaintiff Bey, "at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). However, Plaintiff has already amended his complaint once in this case. *See* Dkts. 1, 31. And Plaintiff had four chances in the First Lawsuit against TransUnion, but strategically dismissed his claims to avoid a likely dismissal with prejudice in the prior action. *See* First Lawsuit Dkts. 144, 145; *see also supra*

14

note 1. Six attempts are enough. In recent years, Plaintiff Bey (under two names) has filed approximately ten civil actions in the Tampa Division. He is not inexperienced in civil litigation.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant TransUnion's Motions to Dismiss, Dkt. 44, is **GRANTED.**

2. Plaintiff Bey's Amended Complaint, Dkt. 31, is **DISMISSED with prejudice.**

3. Plaintiff Bey's Motion for Leave to File a Second Amended Complaint, Dkt. 54, is **DENIED as moot**.

4. The Clerk is directed to **TERMINATE** all deadlines and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida, on February 24, 2026.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record
Plaintiff, *pro se*

15