UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALI TAJ BEY**,

     Plaintiff,

v.                                                                                    Case No. 8:25-cv-02848-WFJ-AAS

**PNC BANK N.A.**, et al.,

     Defendants.

_____/

## <u>ORDER</u>

Before the Court is Defendant PNC Bank, N.A.'s ("PNC Bank") Motion to Dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 83. *Pro se* Plaintiff Ali Taj Bey has responded in opposition. Dkt. 84. As explained below, PNC's motion to dismiss is granted.

## BACKGROUND

The allegations against Defendant PNC Bank are relatively straightforward. On September 10, 2025, Plaintiff applied for credit with PNC Bank while at a Honda dealership. Dkt. 82 ¶ 5. On September 11, 2025, PNC Bank sent Plaintiff a written correspondence titled "Additional Information is Needed to Complete Your Application." *Id.* ¶ 6; *see* Dkt. 82-1 at 3 (showing PNC Bank's written notice on

"Loan Application Number 41924657"). PNC Bank's written notice stated, in relevant part:

> **Here's what happened:**
> You recently visited Westshore Honda regarding the purchase of a new or used vehicle. It is customary for dealerships to explore financing options for prospective buyers. As a result, PNC Bank received your credit application to finance the purchase of a vehicle from Westshore Honda.
>
> After careful consideration, we regret to inform you that we cannot grant the request for credit at this time based on the following reason(s):
>
> **Further steps are needed to verify your identity, please contact us**.
>
> **Here's what you need to do:**
> Contact us at 1-800-752-2561. Please note that we may need to request additional items before a final decision can be made.
>
> IMPORTANT: If you do not contact us within 10 business days of the date of this letter we will regrettably be unable to give further consideration to your request for credit.
>
> Please contact Westshore Honda for questions regarding its choice of lenders and financing options received on your behalf.

Dkt. 82-1 at 3 (emphasis in original).

Additionally, Plaintiff claims he "attempted to cure the alleged incompleteness" by calling PNC Bank while he was at the Westshore Honda. Dkt. 82 ¶ 10. During this "three-way call," "PNC [Bank] represented that its protocol required an independent outbound call to Plaintiff to verify identity." *Id.* ¶¶ 10, 11. Despite remaining "available and on the line with his ringer enabled," Plaintiff

2

alleges PNC Bank never called him and "stated it could not proceed with the application." *Id.* ¶ 11.

The Court previously granted Co-Defendant TransUnion's motion to dismiss the various counts against it in the first amended complaint. *See* Dkt. 57. As such, the only remaining count in the first amended complaint was Count XIII against Defendant PNC Bank. *See* Dkt. 61. On March 30, 2026, Plaintiff filed his Second Amended Complaint Plaintiff, alleging PNC Bank's written notice violated the notification requirements of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f (the "ECOA") by failing to "provide a specific statement of the information needed," which "deprived Plaintiff of the opportunity to cure the alleged incompleteness." Dkt. 82 ¶ 17.

## LEGAL STANDARD

As an initial matter, *pro se* litigants' filings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This liberal reading, however, does not exempt *pro se* plaintiffs from the pleading standards outlined in the Federal Rules of Civil Procedure or the Local Rules of the Middle District of Florida. *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005); *Caton v. Louis*, No. 2:07-CV-32-FtM-99SPC, 2007 WL 9718731, at *1 (M.D. Fla. Feb. 21, 2007). Moreover, a district court may not serve as a *pro se*

3

plaintiff's "*de facto* counsel" or "rewrite an otherwise deficient pleading. . . ." *See GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in a light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citation modified) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). The Court does not need to accept as true any bare legal conclusions offered in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

For the reasons discussed below, PNC Bank's motion is granted, as Plaintiff's Second Amended Complaint fails to state a cognizable claim under the ECOA.

I.     **Count I—ECOA Violation under 15 U.S.C. § 1691; 12 C.F.R. § 1002.9(c)(2)**

The ECOA imposes notification requirements on banks when they deny credit applications. *See* 15 U.S.C. § 1691(d). "When a 'creditor' takes 'adverse action' against an applicant, the applicant 'shall be entitled to a statement of reasons for such

4

action.'" *Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 835 (11th Cir. 2025) (quoting 15 U.S.C. § 1691(d)(2)); *see also* 12 C.F.R. § 202.9(a)(2)(i); 12 C.F.R. § 1002.9(a)(2)(i). A "creditor" is "any person who regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e). And "adverse action" means "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." *Id.* § 1691(d)(6). Once a denial is given, a "statement of reasons" may be provided "in writing as a matter of course to applicants against whom adverse action is taken." *Id.* § 1691(d)(2)(A). It must "contain[] the specific reasons for the adverse action taken." *Id.* § 1691(d)(3). The Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau (the "CFPB") regulations state that the statement of reasons "must be specific and indicate the principal reason(s) for the adverse action." 12 C.F.R. § 202.9(b)(2); 12 C.F.R. § 1002.9(b)(2).

However, PNC Bank's obligation to notify Plaintiff that an adverse action was taken, pursuant to 15 U.S.C. § 1691(d), arises "only when an application is complete." *Yeh Ho v. Wells Fargo Bank, N.A.*, No. 15-81522-CIV, 2020 WL 820264, at *8–9 (S.D. Fla. Feb. 19, 2020), *aff'd*, No. 22-11231, 2023 WL 3120244 (11th Cir. Apr. 27, 2023) (citing *Wright v. Suntrust Bank*, No. 04-CV-2258, 2006 WL 2714717, at *4 (N.D. Ga. Sept. 18, 2006)). An application is deemed complete

once a creditor "has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral)." 12 C.F.R. § 1002.2(f).

Here, the Second Amended Complaint fails to allege that Plaintiff's application was complete when PNC Bank received it on September 10, 2025. Instead, the allegations demonstrate the complete opposite, as PNC Bank's written notice on September 11, 2025, explicitly states that "Additional Information is Needed to Complete Your Application" and informed Plaintiff that "[f]urther steps are needed to verify your identity, please contact us." Dkt. 82-1 at 3 (emphasis omitted); *see* Dkt. 82 ¶¶ 5–7. Therefore, the Court finds that PNC Bank did not have any obligation to notify Plaintiff pursuant to 15 U.S.C. § 1691(d)(2), 12 C.F.R. § 202.9(b)(2), or 12 C.F.R. § 1002.9(b)(2) as alleged.

However, the fact that the notification obligations associated with complete applications were not triggered does not end the inquiry, as the Second Amended Complaint alleges an ECOA violation under 12 C.F.R. § 1002.9(c)(2). *See* Dkt. 82 at ¶¶ 15–19. CFPB regulations state, in pertinent part, that after receiving an incomplete application, the creditor "shall send a written notice to the applicant

6

specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application. The creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period." 12 C.F.R. § 1002.9(c)(2); 12 C.F.R. § 202.9(c)(1)(2). In short, the creditor has a duty to notify an applicant if the application is incomplete.

Here, the attached exhibit to the Second Amended Complaint shows that the written notice from PNC Bank complied with 12 C.F.R. § 1002.9(c)(2) and 12 C.F.R. § 1002.9(c)(3). *See* Dkt. 82-1. In accordance with federal regulation, Plaintiff sent written notice to Plaintiff that specified "[f]urther steps are needed to verify your identity, please contact us," provided a telephone number for Plaintiff to contact, and designated a reasonable period of time (i.e., 10 days) for Plaintiff to contact PNC Bank before denying his application. Dkt. 82-1 at 3. As pled, the Court cannot find any violation of 15 U.S.C. § 1691, 12 C.F.R. § 1002.9(c)(2), or 12 C.F.R. § 202.9(c)(2). While there are allegations that Plaintiff, the Honda Dealership, and PNC Bank were on a "three-way call" on September 10, 2025, there are no allegations that Plaintiff contacted PNC Bank after receiving the written notice dated September 11, 2025. *See* Dkt. 82 ¶¶ 10–11; 12 C.F.R. § 1002.9(c)(2) ("If the applicant supplies the requested information within the designated time period, the

7

creditor shall take action on the application and notify the applicant in accordance with paragraph (a) of this section."). Moreover, PNC Bank's oral notification (via the three-way call) to Plaintiff that it needed additional information to verify his identity, followed by a written notice of incompleteness, fully complies with federal regulations. *See* 12 C.F.R. § 1002.9(c)(3) ("[A] creditor may inform the applicant orally of the need for additional information. If the application remains incomplete[,] the creditor shall send a notice [of incompleteness].").

Plaintiff, however, asserts that PNC Bank's written notice is insufficient under the ECOA since "[t]he regulation requires the creditor to identify what the applicant must provide—documents, data, records—not merely the general subject matter of the deficiency." Dkt. 84 at 2; *see also* Dkt. 82 ¶ 8 ("The PNC Notice did not identify the specific information necessary to complete the application, including the documentation, data points, or verification items required to satisfy PNC [Bank's] stated identity-verification requirement."). Notably absent from Plaintiff's argument is any citation to ECOA or federal regulation that supports his interpretation. Indeed, there is nothing in the ECOA or associated federal regulations that requires a creditor to specify what "documentation, data points, or verification item" is needed to complete an application. *Id.* ¶ 8. Instead, the CFPB only requires the creditor "specifying the information needed," 12 C.F.R. § 1002.9(c)(2); 12 C.F.R. § 202.9(c)(2), which PNC Bank did by indicating it needed to "verify [Plaintiff's]

8

identity" and directed him to call within ten days. Dkt. 82-1 at 3; *see also Yeh Ho v. Wells Fargo Bank, N. A.*, 2023 WL 3120244, at \*3 (finding the creditor's letter satisfied 12 C.F.R. § 202.9(c)(2)'s requirements, because it: (1) specified the information needed, (2) designated a reasonable time period of 14 days to provide the information, and (3) informed the plaintiff that failure to provide the required information would result in the creditor cancelling the loan modification).

More fundamentally, both the Board of Governors of the Federal Reserve System and the CFPB "provide sample notification forms 'intended for use in notifying an applicant that adverse action has been taken on an application.'" *Barat*, 127 F.4th at 836 (quoting 12 C.F.R. pt. 202, App. C; 12 C.F.R. pt. 1002, App. C.). "A creditor 'may . . . use all or a portion of the [sample] forms' to satisfy its notification requirements." *Id.* (quoting 12 C.F.R. pt. 202, App. C; 12 C.F.R. pt. 1002, App. C.). One of these approved sample forms is "Form C-6—Sample Notice of Incomplete Application and Request for Additional Information." 12 C.F.R. pt. 202, App. C, Form C-6; 12 C.F.R. pt. 1002, App. C, Form C-6.

Here, PNC Bank's written notice copies the language and formatting from Form C-6. *Compare* Dkt. 82-1 at 3 *with* 12 C.F.R. pt. 1002, App. C, Form C-6. This is enough to satisfy the notification requirements under 12 C.F.R. § 202.9(c)(2) and 12 C.F.R. § 1002.9(c)(2). *See Barat*, 127 F.4th at 836. Additionally, Form C-6 does not include any language requiring a creditor to specify which "documentation, data

9

points, or verification items" are missing from the application. Dkt. 82 ¶ 8. Instead, the sample form leaves a blank space for the creditor to state what information is still needed to complete the application. *See* 12 C.F.R. pt. 1002, App. C, Form C-6 ("Dear Applicant: Thank you for your application for credit. The following information is needed to make a decision on your application: _____[.]"). PNC Bank followed this sample form by stating, "Additional Information is Needed to Complete your Application," and specified that Plaintiff should contact the bank to "verify your identity" within 10 days. Dkt. 82-1 at 3. The ECOA and federal regulations require nothing more.

## CONCLUSION

Nothing in Plaintiff's complaint adequately alleges that PNC Bank has violated the ECOA's statutory requirements. The Court previously reminded Plaintiff that a repeated failure to state a claim could result in dismissal with prejudice. Dkt. 57 at 14 (citing *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019); *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)). The continued failure to state a viable ECOA claim permits this Court to dismiss the Second Amended Complaint with prejudice. *See England v. Hillsborough Cmty. Coll.*, 546 F. App'x 881, 885 (11th Cir. 2013) (citing *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001)) (affirming dismissal with prejudice

after "two opportunities to file amended complaints, and, each time, gave [the plaintiff] explicit instructions as to what those amended complaints should contain").

To the extent Plaintiff argues he should be granted leave to file a fourth complaint, Dkt. 84 at 4, the Court need not grant a *pro se* plaintiff leave to amend his complaint when further amendment would be futile. *Silberman*, 927 F.3d at 1133. Leave to amend is futile when the complaint, as amended, would still be dismissed. *Id.* The question in such cases is not whether the plaintiff has stated a claim, but instead, "when all is said and done, he *can* do so." *Id.* (emphasis in original). As explained above, the Court concludes that he cannot do so since PNC Bank's letter fully complied with the ECOA's statutory requirements. Therefore, any attempt to amend to state a claim under 15 U.S.C. § 1691 would be futile. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) ("Although a district court 'should freely give leave [to amend] when justice so requires,' Fed. R. Civ. P. 15(a)(2), it may deny leave, *sua sponte* or on motion, if amendment would be futile.").

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant PNC Bank's Motion to Dismiss the Second Amended Complaint, Dkt. 83, is **GRANTED.**

2. Plaintiff Bey's Second Amended Complaint, Dkt. 82, is **DISMISSED with prejudice**.

3. The Clerk is directed to **TERMINATE** all pending motions and deadlines and **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, on April 14, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Plaintiff, *Pro se*
Counsel of Record